### In re CHATEAUGAY CORP., et al., Debtors.

Tammy Dee BACK, et al., Defendants–Appellants,

v.

The LTV CORP., LTV Aerospace and Defense Co., and LTV Vehicle Corp. f/k/a AM General Corp., Plaintiffs–Appellees.

Tammy Dee BACK, et al., Defendants–Appellants,

v.

AM GENERAL CORP. f/k/a Ren Acquisition Corp., Plaintiff–Appellee.

Nos. 96 Civ. 9692(HB), 96 Civ. 9693(HB). Bankruptcy Nos. 86 B 11270(BRL), 86 B 11334(BRL), 86 B 11402(BRL) and 86 B 11464(BRL). Adversary Nos. 96/8237A, 96/8258A.

United States District Court, S.D. New York.

Oct. 8, 1997.

Norman N. Kinel, Whitman Breed Abbott & Morgan, New York City, for Appellants.

Larry D. Henin, Baer Marks & Upham, L.L.P., New York City, for appellee AM General Corp.

Myron Kirschbaum, Kaye, Scholer, Fierman, Hays & Handler, L.L.P., New York City, for Appellees LTV Corp., et al.

### OPINION AND ORDER

BAER, District Judge.

Appellants seek reversal of the Bankruptcy Court's order issuing a preliminary injunction and denying their motions to dismiss these consolidated adversary proceedings. For the reasons discussed below, the Bankruptcy Court's order is affirmed insofar as it held that the Bankruptcy Court had jurisdiction to issue the preliminary injunction.

**BACKGROUND**

Appellants in these consolidated bankruptcy appeals are plaintiffs in three state court actions pending in Virginia, California and Texas seeking damages for injuries and a death resulting from accidents involving DJ–5 Postal Dispatcher Vehicles ("DJ–5's"). Earlier decisions provide more detail and familiarity with those decisions is assumed. Appellants named as defendants in the state court actions New AM General, formerly known as Ren Acquisition Corp., which purchased the assets of Old AM General (a/k/a LTV Vehicle) pursuant to an order of the Bankruptcy Court in LTV Corporation's chapter 11 reorganization proceedings. The sale order approving the sale of assets and the sale agreement itself explicitly excluded

any DJ–5 liabilities from the sale. That is, the New AM General was not to be responsible for any DJ–5 liability that the Old AM General might have had. Subsequent to the sale, Old AM General was dissolved and the sale proceeds distributed to creditors.[1] The New AM General then assumed Old AM General's name and its business.

New AM General and three LTV entities (the "LTV plaintiffs")[2] commenced separate adversary proceedings in the Bankruptcy Court seeking declaratory and injunctive relief enjoining any actions against them for liability for DJ–5 Postal Dispatcher vehicles and moved for a preliminary injunction. Appellants objected to the preliminary injunction and moved to dismiss the complaints on the grounds that the Bankruptcy Court lacked jurisdiction and for failure to state a claim. The Bankruptcy Court held that it had jurisdiction, denied the motions to dismiss and granted the preliminary injunction enjoining any state court action against New AM General or the Debtors based on DJ–5 liability. See 201 B.R. 48. Appellants appeal both the entry of the preliminary injunction and the denial of their motions to dismiss.

## DISCUSSION

### I. Appealability and Finality of Order

■■■ Appellee New Am General argues that the Bankruptcy Court's order is not a final appealable order and that leave to appeal should be denied. It is clear that, contrary to appellants' characterization, the order is not "final". See In re Blinder, Robinson & Co., 135 B.R. 899, 901 (D.Colo. 1992) (denial of motion to dismiss on juris-dictional grounds not final order); In re Cedar Tide Corp., 859 F.2d 1127, 1131 n. 4 (2d Cir.1988) (same) (dicta); Pipkin v. JVM Operating, L.C., 197 B.R. 47, 52 (E.D.Tex. 1996) (preliminary injunction order not final order). However, the discussion does not end there. The Court may treat the notice of appeal as a motion for leave to appeal. B.R. Rule 8003(c). "Leave to appeal an interlocutory order from the bankruptcy court will be granted only where the standard of 28 U.S.C. § 1292(b) is satisfied. Thus, an appeal may lie but the appellant must first demonstrate that the order 'involves a controlling issue of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" Brooks Fashion Stores, Inc. v. Wainscott Sportswear, Inc., No. 96 Civ. 0362(HB), 1996 WL 221591 (S.D.N.Y. May 1, 1996) (citation omitted); 28 U.S.C. § 158(a)(3) (district court may grant leave to appeal interlocutory orders).

The jurisdictional question at the heart of the appeal of the preliminary injunction, as discussed below, involves a controlling issue of law as to which there is a substantial difference of opinion.[3] Furthermore, as the jurisdictional matter may dispose of the case, an immediate appeal may materially advance the ultimate resolution of the litigation. See Whaley v. U.S., 76 B.R. 95, 98 (N.D.Miss. 1987). Courts in this Circuit and elsewhere have allowed interlocutory appeals of preliminary injunctions in cases where defendants

1. There is some dispute as to whether the sale proceeds were distributed solely to creditors of Old AM General/LTV Vehicle or to LTV's creditors in general. There is no dispute that none of the sale assets were placed in trust for future DJ–5 claimants such as appellants. Indeed, it is this failure to account for their claims that led appellants to file their successor liability claims.

2. The LTV plaintiffs are LTV Vehicle, the dissolved corporation whose assets were sold to New AM General; LTV Aerospace and Defense Corp. ("LTVAD"), LTV Vehicle's parent corporation; and LTV Corp., LTVAD's parent corporation. The Virginia action names LTV Vehicle as a defendant pursuant to a stipulation entered into with the Bankruptcy Court's approval, allowing appellant Back to proceed nominally against LTV Vehicle in order to get at its insurance carrier. LTV Corp. has been named as a defendant in the California action, but appellants claim this was "done inadvertently by local counsel" and that they plan on dismissing LTV Corp. as a defendant. LTVAD is not named as a defendant in any of the state court actions. New AM General, the purchaser of the assets, is named as a defendant in each of the state court actions.

3. Appellants limit their arguments to the Bankruptcy Court's jurisdiction to enter the preliminary injunction and do not challenge the propriety of injunction itself based on the record before the Bankruptcy Court. Appellants have "reserve[d] all of their rights in this regard." Appellants Brief ("App. Br.") at 5 n. 2.

have interposed jurisdictional challenges to the issuing court's authority. *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 59 (2d Cir.1981) (non-bankruptcy case); *In re Ocana*, 151 B.R. 670, 671 (S.D.N.Y.1993) (preliminary injunction staying state court proceedings is appealable under 28 U.S.C. § 158(a)); *Pipkin*, 197 B.R. at 52 (granting leave to appeal preliminary injunction). Accordingly, the notice of appeal is treated as a motion for leave to appeal pursuant to B.R. Rule 8003(c) and leave to appeal is granted with respect to the Bankruptcy Court's jurisdiction to issue the preliminary injunction.

■ The arguments in support of granting leave to appeal the denial of the motions to dismiss are less persuasive. *See In re 1820–1838 Amsterdam Equities, Inc.*, 176 B.R. 127 (S.D.N.Y.1994) (denying leave to appeal denial of motion to dismiss); *In re Blinder*, 135 B.R. at 901–02; *but see Whaley*, 76 B.R. at 98 (granting leave to appeal). The parties have not fully briefed the issues raised by the Bankruptcy Court's denial of the motions to dismiss. In light of this lack of briefing and the Court's holding below finding jurisdiction to issue the preliminary injunction (necessitating return of this matter to the Bankruptcy Court), leave to appeal that portion of the Bankruptcy Court's order denying the motions to dismiss is denied.

## II. Bankruptcy Court Jurisdiction to Enjoin the State Court Actions

The Bankruptcy Court found that it had jurisdiction to issue the preliminary injunction on three separate grounds. I address each in turn.

### A. Inherent Jurisdiction

■ The Bankruptcy Court held that it had jurisdiction pursuant to its "inherent or ancillary jurisdiction to interpret and enforce [its] own orders." 201 B.R. at 62. None of the parties dispute this legal principle, but appellants argue that the state court actions do not involve interpretation of, or a challenge to, any orders of the Bankruptcy Court. Resolution of the inherent jurisdiction question turns on an analysis of the nature of appellants' claims in the state

courts. In each of the state court actions, appellants are seeking to impose successor liability on New AM General, in contravention of the general rule of successor non-liability and the explicit exclusion of such liability in the sale agreement and the sale order. In each case, appellants assert that successor liability is appropriate pursuant to the "fraudulent purpose" exception to the general rule of successor non-liability. App. Br. at 12.

Appellants spend a significant portion of their brief arguing that New AM General and the Debtors deceived the Bankruptcy Court regarding the possibility of future DJ–5 claims when they sought and received the Bankruptcy Court's approval of the sale order and other orders. Appellants allege that Debtors' representations to the Bankruptcy Court in this regard "were false when made", App. Br. at 15, 17, and that documents produced by LTV in the Virginia Action "directly contradict the assertions made by the Debtors in the Disclosure Statement, the Bar Date Application and elsewhere." App. Br. at 18. In other words, appellants are alleging that New Am General and the Debtors perpetrated a fraud on the Bankruptcy Court by making false representations. Notwithstanding appellants' contention to the contrary, their allegations go to the heart of the bankruptcy proceeding. This Court therefore adopts the Bankruptcy Court's language that "these allegations constitute a collateral attack on the Sale Order, the Plan and the Confirmation Order as well as on the entire bankruptcy process as it relates to Debtors' chapter 11 cases," 201 B.R. at 58, and concludes that the Bankruptcy Court had jurisdiction to issue the preliminary injunction.

"The ability collaterally to attack bankruptcy petitions in the state courts would also threaten the uniformity of federal bankruptcy law, a uniformity required by the Constitution." *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir.1987) (state courts lack jurisdiction to adjudicate claim that filing of bankruptcy petition constituted abuse of process). A holding that the Bankruptcy Court lacked jurisdiction to adjudicate appellants' allegations of fraud would result in litigation in state courts around the country, with the

very real possibility of inconsistent holdings as to whether the Bankruptcy Court was misled.[4] *See* 201 B.R. at 60. Appellants' reliance on fraudulent conveyance as a basis for asserting successor liability distinguishes this case from those cases, discussed below, where courts have held that bankruptcy courts lack jurisdiction to enjoin state law successor liability actions.[5] Accordingly, the Bankruptcy Court had jurisdiction to enjoin the state court actions pursuant to its inherent jurisdiction to enforce its orders. *See In re Paris Indus.*, 132 B.R. 504, 508 (D.Me. 1991) (inherent jurisdiction to enjoin state law successor liability action against purchaser of debtor's assets); *In re White Motor Credit Corp.*, 75 B.R. 944, 947–48 (Bankr. N.D.Ohio) (same); *In re All American*, 56 B.R. 186, 191 (Bankr.N.D.Ga.1986) (same), *aff'd*, 805 F.2d 1515 (11th Cir.1986).

■ The Bankruptcy Court's inherent jurisdiction, however, is limited to adjudicating those matters that relate directly to the proceedings before the Bankruptcy Court: whether a fraud was committed on the court; the nature and sufficiency of the notice appellants received; and whether the "free and clear" provisions of the sale order apply to *in personam* as well as *in rem* claims. Inherent jurisdiction does not give the Bankruptcy Court authority to adjudicate all matters relating to appellants' state court claims.

**B. Statutory Jurisdiction**

District courts have jurisdiction over all proceedings "arising under or *related to* cases under Title 11." 28 U.S.C. § 1334 (emphasis added). Such cases are referred to the bankruptcy courts pursuant to 28 U.S.C. § 157(a) and the language of section 1334 defines the scope of the bankruptcy court's jurisdiction. The issue to be determined, therefore, is whether the adversary proceeding "relates to" LTV's chapter 11 bankruptcy proceeding, in which a reorganization plan approved several years ago has been substantially consummated.

■ "Related to" jurisdiction is broad, *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995), encompassing any proceedings that "might have any 'conceivable effect' on the bankruptcy estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.1992). A case has a "conceivable effect" on the bankruptcy estate " 'if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " *Bond Street Assocs., Ltd. v. Ames Dep't Stores, Inc.*, 174 B.R. 28, 32 (S.D.N.Y.1994) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)); *Hunnicutt Co. v. TJX Cos.*, 190 B.R. 157, 160 (S.D.N.Y.1995) (same).

■ The parties first debate what effect, if any, plan confirmation has on the Bankruptcy Court's jurisdiction, with appellants arguing that jurisdiction is "constricted" post-confirmation. Strangely, neither party cites *In re Johns–Manville Corp.*, 7 F.3d 32 (2d Cir.1993), in which the Second Circuit held that "[a] bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." *Id.* at 34. In *Johns–Manville*, the reorganization plan specifically excepted jurisdiction over the matters there at issue. By contrast, the plan here contains broad jurisdictional retention clauses that provide the Bankruptcy Court with jurisdiction "to determine any and all disputes arising under or *relating to* the Plan; ... to enforce and administer the provisions of the Plan and this Order; ... [and] to enter such orders ... injunctions and rulings as may be necessary or appropriate in aid of the Plan or its confirmation." 201 B.R. at 56–57. In light of this broad language, the Bankruptcy Court's post-confirmation jurisdiction is as broad as the statutory grant—that is, it extends to all pro-

---

4. While New AM General; as party to each of the state court actions, likely would be bound by any determination that a fraud did occur, the plaintiffs in each state court action would be entitled to litigate the issue anew, even if another state court had held that no fraud had occurred.

5. The Court notes that appellants' allegations regarding fraud and due process are troubling to say the least and deserve the disinterested and objective attention of the Bankruptcy Court.

ceedings "related to" the bankruptcy. *See In re U.S. Lines, Inc.*, 169 B.R. 804, 816 (Bankr.S.D.N.Y.1994) (broad plan language cannot expand jurisdiction beyond statutory grant of section 1334).

■ The Bankruptcy Court concluded that it had "related to" jurisdiction because the state court actions against New AM General have a "conceivable effect" on the bankruptcy estate in the following ways: (1) the possibility that New AM General would file claims against the Debtors for contribution or indemnity; (2) the possibility that the Debtors would be collaterally estopped from asserting bankruptcy discharge defenses should one of the state courts find fraud, collusion or insufficient notice in the bankruptcy process; (3) the risk of inconsistent judgments; (4) hampering Debtor's "fresh start"; and (5) the possible drop in value of LTV's stock, which many creditors received as payment for their claims.[6]

Subsequent to the commencement of the adversary proceedings, New AM General filed an indemnity action against LTV Vehicle (a/k/a Old AM General) and entered into tolling agreements with the other LTV entities. Appellants argue that LTV Vehicle has been dissolved and that in any event it did not receive a discharge, thus obviating any concerns raised by claims against it. There is, however, a chance New AM General will file claims against the other LTV entities as alter egos of LTV Vehicle. Such a possibility would appear to meet the "any conceivable effect" test for "related to" jurisdiction. A closer analysis and examination of the case law, however, leads to the contrary conclusion.

In *Pacor, supra*, the Third Circuit held that an indemnity action against the debtor did not create a "conceivable effect" on the estate because, absent an indemnity agreement among the parties, "there would be no automatic liability against [the debtor] on account of a judgment against Pacor [the debtor's supplier of asbestos]." *Pacor*, 743 F.2d at 995.[7] Other appellate courts that have considered the issue have also held that bankruptcy courts lack statutory jurisdiction to hear challenges to state court successor liability actions brought against purchasers of debtors' assets. *See Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir.1994) (bankruptcy court lacks jurisdiction to enjoin a state court products liability suit against purchaser of debtor's assets predicated on successor liability); *cf. In re Savage Indus., Inc.*, 43 F.3d 714, 719 n. 7, 722–23 (1st Cir. 1994) (reversing bankruptcy court injunction enjoining successor liability claims against transferee of debtor's assets where bankruptcy court never approved transfer; does not address jurisdictional question); *In re Mooney Aircraft, Inc.*, 730 F.2d 367, 375 (5th Cir.1984) (bankruptcy court lacked jurisdiction to enjoin successor liability action against purchaser of debtor's assets under old bankruptcy code, which did not have "related to" jurisdiction).

Courts in this district that have found "related to" bankruptcy jurisdiction based on possible indemnity obligations have done so only on more compelling facts, and not in the successor liability context. In *Bond Street Assocs.*, the district court held that the bankruptcy court had jurisdiction to hear a claim against the assignor of a lease. The court based its holding that "absence of an indemnification agreement does not preclude 'related to jurisdiction' " on recognition of the fact that "lessees will normally have a claim against the debtor-assignee for losses caused by the assignee's breach." 174 B.R. at 32–33. Similarly, in *Hunnicutt*, the court found "related to" jurisdiction for a claim against the guarantor of the debtor's lease, where debtor had agreed to indemnify the guarantor. 190 B.R. at 161. In both *Bond Street* and *Hunnicutt*, the courts did not require a showing of "automatic liability" on the part of

---

6. Clearly, the claims against the Debtors themselves (LTV Vehicle and LTV Corp.) have a "conceivable effect" on their estates. The issue is whether successor liability claims against non-debtor New AM General have such a "conceivable effect."

7. The Third Circuit later retreated from this seeming "automatic liability" requirement. While not disavowing *Pacor*, the Third Circuit subsequently noted that "[a] key word in [the 'related to'] test is 'conceivable.' " *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991).

the debtor for the defendant's possible liability. In each case, however, the party seeking indemnification had a reasonable legal basis for its indemnification claim. By contrast, appellees here have not articulated a reasonable legal basis for such a claim.

Clearly, the "automatic liability" language in *Pacor* is inconsistent with this Circuit's "any conceivable effects" test. At the same time, the mere assertion of an indemnity claim against a debtor, no matter how baseless, cannot trigger bankruptcy jurisdiction. Rather, in order to meet the "any conceivable effects" test, an indemnity claim against the debtor must have a reasonable legal basis. Accordingly, in light of *Pacor* and *Zerand*, and in absence of any articulated legal basis for an indemnity action against Debtors, the Bankruptcy Court lacks statutory jurisdiction to hear appellees' claims.

■ While there is some support for the proposition that the possible drop in LTV's stock price constitutes a "conceivable effect" on the Debtors, *see Hunnicutt,* 190 B.R. at 161 (potential drop in stock price relevant consideration), such a possible effect on stock price is not enough to sustain jurisdiction. First, it appears that no evidence was presented to support any conclusion regarding stock price. Second, a drop in LTV's stock price would occur only if investors believed that New AM General had a legal basis to assert an indemnity action against LTV, which, as discussed above, does not appear to be the case. The other alleged bases of "related to" jurisdiction are also insufficient to sustain jurisdiction.

The Bankruptcy Court relied on three cases—two from bankruptcy courts and one from a district court—that held that "related to" jurisdiction encompasses the power to enjoin state court successor liability actions against the purchaser of a debtor's assets. *In re Paris,* 132 B.R. at 507–08; *see also In re All American,* 56 B.R. 186 (enjoining state court action without specifying basis of jurisdiction); *In re White Motor,* 75 B.R. at 947–48 (finding jurisdiction under 11 U.S.C. § 105(a) without reaching "related to" jurisdiction). Nevertheless, the only Courts of Appeal to address the issue have ill held that "related to" jurisdiction does not extend to

such suits. I accordingly follow the modern trend as evidenced in *Pacor* and *Zerand* and hold that, on these facts, the Bankruptcy Court lacked statutory jurisdiction to hear the adversary proceeding.

### C. Bankruptcy Code Sections 1142 and 105

■ The Bankruptcy Court also found it had jurisdiction pursuant to 11 U.S.C. §§ 1142 (court may order any act necessary for consummation of plan) and 105 (court may issue any order necessary to carry out provisions of Title 11). As appellants correctly note, however, neither section 1142 nor section 105 confers jurisdiction on the Bankruptcy Court; they merely codify that court's equitable powers. *In re Wolverine Radio Co.,* 930 F.2d 1132, 1140–41 n. 13 (6th Cir. 1991). In a sense, these sections codify the bankruptcy court's inherent power to enforce its own orders. The sole basis for the Bankruptcy Court's jurisdiction, therefore, is its inherent power to enforce its own orders and hear challenges to the validity of proceedings held before it.

### III. Bankruptcy Court Jurisdiction to Adjudicate Claims for Declaratory Relief

Appellants also argue that the Bankruptcy Court improperly denied their motion to dismiss the complaints in the adversary proceedings for lack of jurisdiction. This portion of the appeal, like the appeal of the preliminary injunction, is not appealable as a final order. As discussed above, the arguments in support of granting leave to appeal are less compelling when a motion to dismiss is at issue than when a court has issued a preliminary injunction. Furthermore, though the parties have briefed the Bankruptcy Court's jurisdiction to adjudicate the government contractor defense (one of the claims appellants seek to dismiss), they have not briefed the other matters relating to the motions to dismiss. Finally, as the Court has held that the Bankruptcy Court had jurisdiction to issue the preliminary injunction, thus necessitating return of the case to the Bankruptcy Court in any event, deciding the remaining jurisdictional issues is unlikely to

"materially advance the ultimate termination of the litigation." Accordingly, the Court denies leave to appeal the denial of the motions to dismiss.[8]

## CONCLUSION

The decision of the Bankruptcy Court is AFFIRMED to the extent that it held that the Bankruptcy Court has inherent jurisdiction to enjoin state court actions alleging fraud in the bankruptcy context. The Court denies leave to appeal from the motions to dismiss. The Bankruptcy Court is directed to reach and adjudicate the merits of the actions as soon as possible so that appellants, who have now had their state court claims pending for up to four years, can finally have their day in court.

**SO ORDERED.**

---

**8.** This Court's decision with respect to the Bankruptcy Court's jurisdiction to enter the preliminary injunction necessarily decides the Bankruptcy Court's jurisdiction to adjudicate those claims upon which the injunction is predicated— *i.e.,* claims relating to appellants' allegations of fraud in the state court actions. Appellants' motions to dismiss those claims for lack of jurisdiction were thus properly denied. It is the remaining aspects of the motions to dismiss that the Court declines to rule on in this appeal.