**In re CLUB VENTURES INVESTMENTS LLC,**
**Debtor.**

**Mark Berkowitz, Appellant,**

v.

**Club Ventures Investments LLC, et al., Appellees.**

**No. 13 Civ. 2521 (ALC).**

United States District Court, S.D. New York.

Signed March 31, 2014.

Mark Berkowitz, pro se.

Jonathan Laurence Flaxer, Golenbock Eiseman Assor Bell & Peskoe LLP, New York, NY, for Appellees.

### MEMORANDUM & ORDER

ANDREW L. CARTER, JR., District Judge.

## I. Introduction

This action is an appeal from the United States Bankruptcy Court for the Southern District of New York (Gropper, B.J.) permitting Appellees to serve their statement of the issues and counter-designations of the record for a prior bankruptcy appeal on Appellant in one of several specified manners to which Appellant could elect.

Appellant, proceeding pro se, argues the order violated his due process rights because the methods of service contained therein are not proscribed by the Federal Rules of Bankruptcy Procedure. Additionally, Appellant claims he did not receive the documents in a timely fashion, such that he could meaningfully prosecute his appeal, which was subsequently dismissed by the United States District Court for the Southern District of New York (Castel, J.). Appellees contend the order from the Bankruptcy Court was necessitated by Appellant's own conduct, including his refusal to provide an address where he could be served and to accept service by any recognized means under the Rules.

## II. Background

Appellees Club Ventures Investments LLC and seventeen subsidiaries (or "Debtors") filed a petition under chapter eleven of the United States Bankruptcy Code on March 2, 2011. Appellant Mark Berkowitz, who previously served as the Chief Financial Officer for the Debtors from November 2005 to June 2007, filed a state court action in connection with his termination on November 30, 2007. Berkowitz's state court action was automatically stayed against the Debtors when they filed for bankruptcy. Subsequently, Berkowitz became involved in the bankruptcy proceedings upon filing a proof claim with the Bankruptcy Court on June 15, 2011, as an unsecured creditor in the amount of $10,149,531. (Flaxer Decl. Ex. 2.)

On his proof of claim form, also known as Form B10, in response to the inquiry "Name and address where notices should be sent:" Berkowitz listed an email address "with hard copy to: Mark Berkowitz; c/o Mr. Tibor Nagy and Mr. Seth Ard; Susman Godfrey LLP; 560 Lexington Avenue, 15th Floor; New York, N.Y. 10022, U.S.A." (*Id.*) On June 25, 2013, Berkowitz

filed an amended proof of claim form that listed new contact information:

Mark Berkowitz. Creditor has no current permanent physical address, travels, and may be outside the U.S. Call 208–450–5024 to ask where to send for a particular date. E-mail may go to Berkowitz.CVI.Bankruptcy@gmail.com (not accepted for official service of notices). Creditor cannot access PACER and does not always have computer internet access. Previous address is not valid and does not forward.

(Flaxer Decl. Ex. 3.) Appellees state, however, the amended proof of claim was not reflected on the claims register maintained by the Bankruptcy Court until May 22, 2013.

The Debtors filed the Second Amended Joint Plan of Reorganization ("Plan") on September 20, 2011 (No. 11–10891, Dkt. No. 168), and on September 23, 2011, the Bankruptcy Court conducted a hearing on the Plan. Berkowitz did not file written objections but appeared at the hearing to oppose the Plan. The Bankruptcy Court overruled his objections and confirmed the Plan, which became effective on November 23, 2011. (No. 11–10891, Dkt. No. 180.) No appeal was taken from the confirmation order and no stay of the consummation of the Plan was requested by Appellant.

In September of 2011, the Debtors sought to disallow, subordinate, or reclassify Berkowitz's claim on various grounds. (No. 11–10891, Dkt. No. 161.) The Bankruptcy Court denied the motion and lifted the stay with respect to Berkowitz's state court action, allowing him to proceed with those claims. (No. 11–10891, Dkt. No. 230.) The Court also noted the Debtors could move to estimate the claim "if . . . the length of time needed to obtain a State Court determination is unfairly prejudicing other creditors by delaying a distribution to them or requiring the instant chapter 11 case to remain open . . ." under 11 U.S.C. § 502(c). (Id.) The Debtors moved pursuant to § 502(c) to estimate the claim, and motion practice and a hearing on the issue followed.

By order dated December 11, 2012, the Bankruptcy Court issued a Memorandum of Decision and Order estimating Berkowitz's claim at $184,693.06. (Flaxer Decl. Ex. 6.) On January 18, 2013, the Debtors attempted to make a final distribution under the Plan to all unsecured creditors, including to Berkowitz in the amount of $9,614.35. (Zarlengo Decl. ¶ 2 Ex. 1.) The check was sent to the address for Susman Godfrey listed on Berkowitz's original proof of claim form. (Id.) By letter dated February 14, 2013, Appellees' counsel alerted Berkowitz he was in possession of the check, and he would forward the check to Berkowitz upon notification of an appropriate address. (Flaxer Decl. Ex. 11.) He also warned Berkowitz that if the check was not claimed within a certain period, Berkowitz would be barred from receiving a distribution. (Id.) The check was never claimed, and the distribution was forfeited.

Berkowitz timely filed a notice of appeal of the December 11 order estimating his claim at $184,693.06 on December 26, 2012, which was docketed in the District Court as case no. 13–cv–1522 and assigned to Judge Castel. Berkowitz filed his statement of the issues and designations of the record in the Bankruptcy Court for the appeal before Judge Castel on January 9, 2013. The Debtors filed their counter-statement and counter-designations on January 23, 2013, serving them on Berkowitz by email and at the Susman Godfrey address. (Flaxer Decl. Ex. 12.) Berkowitz objected to this manner of service and filed a motion in the Bankruptcy Court on January 30, 2013 to compel the Debtors to serve their counter-designa-

tions on him in-person and provide hard copies of all documents designated in the record. (Flaxer Decl. Ex. 14.)

The Bankruptcy Court issued an order dated February 1, 2013 in response to Berkowitz's January 30, 2013 motion. The order stated, in pertinent part:

1. The Debtors or their counsel shall make available to Berkowitz on or before February 8, 2013(i) their Designation of Additional Items to Be Included in the Record on Appeal and Counter–Statement of Issues to Be Presented on Appeal and (ii) a copy of each document listed on the Counter–Designation of Items for Record on Appeal.

2. The documents identified in ¶ 1 above shall be made available to Berkowitz in one of the following manners: (i) by attachment in Word or WordPerfect format to an email if practical; (ii) by pick-up at the offices of Debtors' counsel in New York; (iii) by pick-up at the offices of Debtors' counsel in Los Angeles; or (iv) by mail or overnight courier to an address designated by Berkowitz. Berkowitz shall choose one of the foregoing methods of delivery provided it is practical, and shall inform Debtors' counsel of his choice on or before February 4, 2013.

(Flaxer Decl. Ex. 16.) After a series of correspondence between Berkowitz and counsel for Appellees, Berkowitz indicated that none of the methods of service were practical and declined to select one by the deadline in the order. (Flaxer Decl. Ex. 17.) Berkowitz filed a notice of appeal with respect to the February 1 order on February 4, 2013, which is the subject of the instant appeal. (No. 11–10891, Dkt. No. 298.)

On July 16, 2013, Judge Castel issued an order dismissing Berkowitz's appeal of the Bankruptcy Court's December 11 order estimating his claim at $184,693.06. (Flax-

er Decl. Ex. 8.) Judge Castel ruled Berkowitz's appeal was equitably moot, as the Plan had already been confirmed in the Bankruptcy Court and final distributions were made. (*Id.*) Berkowitz appealed Judge Castel's July 16, 2013 decision to the United States Court of Appeals for the Second Circuit. By order dated October 9, 2013, the Second Circuit dismissed the appeal, and its mandate issued on November 5, 2013. (Flaxer Decl. Ex. 9.)

## III. Discussion

Appellant claims the February 1 order of the Bankruptcy Court violated his constitutional rights to due process because the proscribed methods of service are not included in the Federal Rules of Bankruptcy Procedure. Appellant further contends the Bankruptcy Court erred: (i) in denying his request for a PACER exemption, (ii) in refusing to compel Appellees to serve their counter-designations of the record on Appellant, (iii) in refusing to compel Appellees to provide hard copies of all designations to Appellant, (iv) in refusing to extend the deadline for Appellant to respond to Appellees' designations, and (v) in refusing to strike Appellees' designations that allegedly were not served on Appellant. Appellant moves the Court to:

(i) "order the Bankruptcy Court to grant [Appellant] an exemption from fees for PACER for the [Appellant] in the underlying case[,]" (ii) "order the [Appellees] to serve promptly to [Appellant] personally, in hard copy, the [Appellees] counter-statement of issues in [the appeal previously adjudicated and dismissed by the Second Circuit] and counter-designation of issues ... along with a copy of each item that the parties designated as items for [sic] record on appeal[,]" (iii) "order after such service, the [Appellant] shall be permitted 14 (fourteen) days to file a designation of

additional items for [sic] record on appeal in reply to items cross-designated by the [Appellees,]" and (iv) "order that upon filing of [Appellant's] reply and additional designations, the clerk of the Bankruptcy Court shall forward all the appropriate items ... to this Court so that this Court may then schedule [the appeal previously adjudicated and dismissed by the Second Circuit] to proceed in this Court."

(Appellant Br. at 17.) Appellees argue the February 1 order was consistent with the Federal Rules of Bankruptcy Procedure, so Appellant was not denied due process. Additionally, much of the relief Appellant is seeking would be precluded by Judge Castel's July 16, 2013 order and the Second Circuit's dismissal of the appeal resulting therefrom. Lastly, Appellees contend this appeal is moot because the Court cannot grant Appellant an effective remedy.

## A. *Standard of Review*

■ District courts have jurisdiction over appeals from final orders of the bankruptcy courts pursuant to 28 U.S.C. § 158(a). *See also* Fed. R. Bankr.P. 8013 ("On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."). This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard and reviews conclusions of law *de novo. Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 989 (2d Cir.1990). A finding of fact is "clearly erroneous" when there is a "definite and firm conviction that a mistake has been made." *In re Ames Dep't Stores, Inc.,* 582 F.3d 422, 426 (2d Cir.2009) (citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

■ "A document filed *pro se* is 'to be liberally construed,' and '... must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal citations omitted); *Ortiz v. McBride,* 323 F.3d 191, 194 (2d Cir.2003) (noting submissions from *pro se* litigants should be construed "liberally"). The Court reads Berkowitz's briefs to raise the strongest possible arguments they suggest.

## B. *Jurisdiction over this Appeal*

■ Although neither party meaningfully addressed the issue of subject matter jurisdiction, it is well established that the Court may determine its jurisdiction to hear a case *sua sponte. Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 193 (2d Cir.2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court *sua sponte.* 'If subject matter jurisdiction is lacking, the action must be dismissed.'" (internal citation omitted)). By statute, District Courts "have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; ... [and] (3) with leave of the court, from other interlocutory orders and decrees[.]" 28 U.S.C. § 158(a) (2014). "Thus, parties may appeal final orders and decrees of the bankruptcy court as of right, but may only appeal interlocutory orders with leave of court." *Pileckas v. Marcucio,* 156 B.R. 721, 723 (N.D.N.Y.1993).

■ The Bankruptcy Court's February 1, 2013 order cannot be characterized as "final." "A final order 'ends the litigation on the merits and leaves nothing for the court to do but exercise the judgment.'" *In re Chateaugay Corp.,* 826 F.2d 1177, 1179 (2d Cir.1987) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). The standard

for determining finality is relaxed in bankruptcy cases due to the nature of the proceedings. "According to the Second Circuit, an order of the Bankruptcy Court 'may be immediately appealed if it disposes of discrete disputes within the larger case.'" *N. Fork Bank v. Abelson,* 207 B.R. 382, 386 (E.D.N.Y.1997) (quoting *In re Johns–Manville Corp.,* 824 F.2d 176, 179 (2d Cir.1987)). Here, Appellant contests the Bankruptcy Court's rulings on the manner in which he can be served and whether he is entitled to a PACER exemption. The order neither resolves Appellant's claim nor directly affects the disposition of the Debtor's assets. *See In re Fugazy Exp., Inc.,* 982 F.2d 769, 775–76 (2d Cir.1992) ("Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of *discrete disputes within the larger case.* By 'disputes' we do not mean merely competing contentions with respect to separable issues; … a 'dispute,' for appealability purposes in the bankruptcy context, means at least an entire claim on which relief may be granted." (internal quotation marks and citations omitted) (emphasis in original)).

██ Since appeal cannot be taken as a matter of right in accordance with 28 U.S.C. § 158(a)(1), this action may only be maintained with leave of the Court under subsection (a)(3).[1] There is no specific guidance in the statute and the Bankruptcy Rules as to when an interlocutory appeal should be granted. "It has been recognized, however, that the decision is within the district court's sound discretion and that the court may apply, by analogy, the standards set forth in 28 U.S.C. § 1292(b) governing the appealability of interlocutory decisions of district court judges." *Pileckas,* 156 B.R. at 724 (citing *In re Crescenzi,* No. 91 Civ. 8045(PKL), 1992 WL 30615, at *4 (S.D.N.Y. Feb. 5, 1992)). The following factors counsel whether an interlocutory appeal should be taken by the Circuit:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order[.]

28 U.S.C. § 1292(b) (2014). In this case, it is particularly hard to discern how the order at issue involves a controlling question of law or how immediate appeal therefrom will materially advance the litigation, particularly in light of the District Court's subsequent resolution of the December 11 order estimating Appellant's claim. Accordingly, the Court declines to exercise jurisdiction over this appeal.

For the purpose of comprehensiveness, the Court also notes that the Bankruptcy Court did not err in the rulings encompassed by the February 1, 2013 order.

### C. *The Bankruptcy Court's February 1, 2013 Order*

██ On Berkowitz's amended proof of claim form he stated he had "no current permanent physical address, travels, and may be outside the U.S." (Flaxer Decl. Ex. 3.) He claims the Susman Godfrey address listed on his original proof of claim form "is not valid and does not forward." (*Id.*) He listed an email address but noted he would not accept "official service of no-

---

**1.** Appellant did not seek leave of the Court to file this appeal.

tices" via email. (*Id.*) Instead, anyone who wishes to serve papers upon Berkowitz is directed to call him on the particular day they wish to effectuate service, at which point he will reveal his location to be personally served. (Flaxer Decl. Ex. 13.)

Indeed, Berkowitz's position on service was clearly stated in an email exchange he had with opposing counsel on January 24, 2013 at 4:28 p.m., after counsel for Appellees attempted to provide Berkowitz with a copy of Appellees' statement of the issues and counter-designations of the record via email and to the Susman Godfrey address:

I shall not insult anyone's intelligence by taking seriously your bizarre notion that you have served papers to me by e-mail. I have not consented and do not consent to service by e-mail.... As you know, if you wish to serve me papers, you may call me so I can advise you where I might be served on any particular day.

(*Id.*) Notwithstanding the overall curt nature of the communications between them, counsel for Appellees repeatedly informed Berkowitz that he did not have contact information for him, but if Berkowitz provided an address, counsel for Appellees would send Berkowitz a hard copy of the documents. (*Id.; see also* Flaxer Decl. Ex. 15.)

Berkowitz, who was unwilling to accept the documents from Appellees' counsel in any manner other than the one dictated by him, moved the Bankruptcy Court on January 30, 2013 to "order that Debtor must serve all papers [Appellees] filed ... with copies of all papers to which those papers may refer and copies of all items the parties have designated for record of appeal, to Mr. Berkowitz personally ... and that, for the duration of this case and all appeals ... [Appellees] must serve to Berkowitz personally all papers it files...." (Flaxer Decl. Ex. 14 at 7.) Puzzlingly, in his motion, Berkowitz states he has "provided

contact information for service of notice and papers in his filed proof of claim form." (*Id.* at 4.) Yet, the proof of claim form contains no address for service, but only a phone number and email address, which in the very next line of his motion Berkowitz announces is not an acceptable form of service. (*Id.*)

In attempting to address Berkowitz's concerns, the Bankruptcy Court issued the February 1 order providing Berkowitz with four different methods to select from in receiving service of Appellees' papers. (Flaxer Decl. Ex. 15.) The order further instructed Berkowitz to notify Appellees' counsel of his preferred method by no later than February 4, 2013. In lieu of complying with the order, Berkowitz wrote to Appellees' counsel on February 4, 2013 at 2:21 p.m., "The order says to choose and inform you of one of those methods of delivery provided it is practical. As none is practical, I notify you of none of them." (Flaxer Decl. Ex. 17.) Without further notice to the Bankruptcy Court that none of the methods suggested in the February 1 order were "practical," Berkowitz filed the instant appeal.

As Judge Castel noted in his July 16, 2013 order, Berkowitz does not argue he cannot be served, but instead, he can *only* be served by calling him on a particular day at which time he will inform the caller of his location on that day so personal service can be effected upon him. Berkowitz made clear at various points in the bankruptcy proceedings that he may be located in California; he may be located in the New York area; he may be travelling abroad; he may be in an area only temporarily; he may be difficult to reach. Nonetheless, no other form of service besides his specified manner of personal service would be "practical."

Berkowitz relies on the Federal Rules of Bankruptcy Procedure to support his ar-

gument that because the Bankruptcy Court did not order Appellees to serve him personally, he was denied his due process rights. Rule 8008 states: "Service may be personal or by mail." Fed. R. Bankr.P. 8008(c). But nothing in Rule 8008 mandates personal service on Berkowitz—that is simply one option. Berkowitz's position that he is entitled as a matter of right to only personal service is unfounded in the law and the Rules. *See In re Park Nursing Ctr., Inc.,* 766 F.2d 261, 264 (6th Cir. 1985) (stating there was "no authority" for the appellant's contention that personal service is required in bankruptcy proceedings). Importantly, the only reason why service by mail was not "practical" was because Appellant refused to provide an address at which he could receive documents or acknowledge service of documents by another method, such as email.

Furthermore, the Court agrees with Judge Castel's assessment that under certain circumstances, "a district court has broad discretion to fashion the means by which a party may be served. . . ." (Flaxer Decl. Ex. 8 at 7.) This Court sees no reason why the Bankruptcy Court would not be afforded the same discretion in the proceedings below. Even more, the Bankruptcy Court took great care to afford Berkowitz options from which he could choose in order to move the bankruptcy proceedings forward while still respecting Berkowitz's rights to notice and an opportunity to be heard. All of the options for service proposed by the Bankruptcy Court were reasonably calculated to apprise Berkowitz of any action being taken by Appellees and provide him with an opportunity to voice his position or objection. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (observing the object of service should be notice of the proceedings and an opportunity to voice objections). But, Berkowitz neither complied with the

February 1 order nor provided any reasonable basis for why none of the methods described in the order were "practical."

The Court sees no error in the Bankruptcy Court's order, and the fact that the order was not to Berkowitz's satisfaction certainly does not create error where there otherwise is none.

## D. *PACER Exemption*

Berkowitz also appeals the Bankruptcy Court's denial of his request for a discretionary exemption from the user fees charged for access to the Public Access to Court Electronic Records ("PACER") system in his January 30, 2013 motion. (Flaxer Decl. Ex. 14 at 8; Flaxer Decl. Ex. 16.) As noted in this Court's August 16, 2013 order, PACER fees are set forth in the Electronic Public Access fee schedule adopted by the Judicial Conference of the United States Courts. (Dkt. No. 7.) The fee schedule contains four automatic fee exemptions, which include exemptions for *pro se* litigants to receive "one free electronic copy, via the notice of electronic filing or notice of docket activity, of all documents filed electronically" and for case information and documents retrieved through the public access terminals at the courthouse. *See* Electronic Public Access Fee Schedule (Apr. 1, 2013), http://www.pacer.gov/documents/epa_feesched.pdf (last visited Mar. 25, 2014).

While courts may, in their discretion, grant additional exemptions, "[a] party seeking a discretionary exemption cannot rely on his *in forma pauperis* status alone. The party must demonstrate that an exemption beyond the four automatic exemptions 'is necessary . . . to avoid unreasonable burdens and to promote public access to information.'" *Mallgreen v. Parties in this petition.* No. 13 Civ. 3660 (S.D.N.Y. Aug. 1, 2013) (citation

omitted). Given Berkowitz's seemingly extensive use of email during the bankruptcy proceedings, through which he could have automatically received a copy of electronic filings, and his failure to show how granting an exemption would promote public access to information, the Bankruptcy Court did not abuse its discretion in denying him a PACER exemption.[2]

### E. Appellant's Response to Appellees' Designations

■ The final issue Berkowitz raises for appeal is whether the Bankruptcy Court properly refused to extend the deadline for Appellant to respond to Appellees' designations. Rule 8006 governs the submissions of designations in a bankruptcy appeal:

> Within 14 days after filing the notice of appeal[,] . . . the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Within 14 days after the service of the appellant's statement the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal and, *if the appellee has filed a cross appeal,* the appellee as cross appellant shall file and serve a statement of the issues to be presented on the cross appeal and a designation of additional items to be included in the record. A cross appellee may, within 14 days of service of the cross appellant's statement, file and serve on the cross

appellant a designation of additional items to be included in the record.

Fed. R. Bankr.P. 8006 (emphasis added). By the plain language of the rule, Appellant only has a right to submit further designations if there is a cross-appeal filed by Appellees. As correctly noted in their brief, however, Appellees did not cross-appeal. (Appellees' Br. at 17 n.6.) This argument, too, is unavailing.

■ The Court observes that even assuming Berkowitz was correct in assigning error to the Bankruptcy Court, the relief requested in this appeal would still be moot. After a thorough analysis, Judge Castel found the Plan, which was approved in the bankruptcy proceedings, has been substantially consummated, and Berkowitz was unable to "overcome the presumption of equitable mootness." (Flaxer Decl. Ex. 8 at 4). Equitable mootness is a prudential doctrine that permits reviewing courts to dismiss bankruptcy appeals when implementing effective relief would be inequitable based on the facts of the case. $R^2$ *Invs., LDC v. Charter Commc'ns (In re Charter Commc'ns, Inc.),* 691 F.3d 476, 481 (2d Cir.2012). Judge Castel concluded, "Effective relief may not be granted . . . because on January 18, 2013, . . . the Reorganized Debtor made a final distribution to unsecured creditors. . . ." (Flaxer Decl. Ex. 8 at 4).

Though Judge Castel's ruling is not binding on this Court, the law of the case doctrine counsels against heedlessly revisiting prior rulings in a case.[3] *See Lillbask*

---

**2.** Here, Berkowitz was granted a PACER exemption because this proceeding is an appeal. The Court used its discretion to grant the exemption so Berkowitz could access documents that constitute the record for appeal. Therefore, the fact that Berkowitz was granted a PACER exemption in this case has no bearing on the Bankruptcy Court's assess-

ment that Berkowitz's request was unnecessary in those proceedings.

**3.** Though the appeal in front of Judge Castel was technically filed as a separate, unrelated appeal by Berkowitz, the cases are based on the same underlying proceedings, and the relief requested by Appellant inherently touches on issues before Judge Castel. Therefore, the

*ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 94 (2d Cir.2005) ("Under the 'law of the case' doctrine, 'courts are understandably reluctant to reopen a ruling once made,' especially 'when one judge or court is asked to consider the ruling of a different judge or court.' " (citation omitted)). At its core, the very relief requested by Appellant asks this Court to reopen, and essentially rehear, the earlier appeal. Yet, Judge Castel's ruling on the application of equitable mootness to the appeals of the underlying bankruptcy case is certainly appropriate, so, this Court would not order Appellant's desired relief in any event. *See id.* (noting the law of the case doctrine is not a lack of authority but is an exercise of restraint in the court's discretion).

Finally, on March 27, 2014, Appellant requested permission to file motions under Fed.R.Civ.P. 11 and Fed. R. Bankr.P. 9011 for sanctions against Appellees. As stated in the foregoing, this Court lacks jurisdiction over this appeal. To the extent sanctions may still be imposed on a party to this appeal, the Court, in its discretion, declines to do so.

## IV. Conclusion

The remaining arguments of the parties are without merit and therefore, are not addressed. For the reasons fully set forth above, this appeal is **DISMISSED** for want of subject matter jurisdiction. The Clerk of Court is respectfully directed to close all pending motions and close this appeal.

The PACER exemption provided to Appellant Berkowitz by Order dated August 16, 2013 is terminated in light of the disposition in this case. A copy of this Order shall be sent to the PACER Service Center.

law of the case doctrine would seem to be

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied. *See Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

equally applicable under these circumstances.